**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>MARGARET ROLANTI,<br><br>               Debtor | Chapter 7<br>Case No. 12-14189-FJB |

**MEMORANDUM OF DECISION ON
DEBTOR'S MOTION FOR ORDER REQUIRING CITIMORTGAGE TO GIVE
IMMEDIATE ACCESS TO DEBTOR'S ELECTRONIC FINANCIAL RECORDS
AND TO HOLD CITIMORTGAGE IN WILLFUL VIOLATION OF
<u>THE AUTOMATIC STAY AND IN CONTEMPT OF THE DISCHARGE INJUNCTION</u>**

After chapter 7 debtor Margaret Rolanti received a discharge and her case was closed, she asked her mortgagee, CitiMortgage, Inc. (CMI), to restore to her the access to CMI's online banking functions that she had enjoyed prepetition, but CMI denied her request, saying that its policy was to reinstate those functions only to debtors who had reaffirmed their mortgage debts. Though Rolanti remained current on her mortgage obligations, she has not reaffirmed her debt to CMI. She then reopened her case and now has moved (i) for an order compelling CMI to restore her access to CMI's online banking functions, (ii) for a determination that CMI's denial of access was a violation of the automatic stay and an award of damages therefor, and (iii) for a determination that CMI's denial of access is a violation of her discharge and an award of damages therefor. After briefing and an evidentiary hearing, I now enter the following findings of fact and conclusions or law and determine that Rolanti is entitled to no relief.

**Findings of Fact**

Rolanti filed a petition for relief under chapter 7 of the Bankruptcy Code on May 15, 2012 and, in the case thereby commenced, received a discharge on August 14, 2012. Her case was closed on August 17, 2012.

At the time of her bankruptcy filing, Rolanti owned a home in Needham, Massachusetts that was and remains encumbered by a mortgage in favor CMI. Rolanti was not in payment default on her mortgage at the time of her filing, and she has not been in payment default since the filing. Until his death before the bankruptcy filing, Rolanti's husband had always taken care of the couple's dealings with CMI, including the making of payments to CMI on the mortgage loan. Before the bankruptcy filing, CMI gave Rolanti and her husband access to its so-called financial services website in connection with their mortgage loan. This access included the online payment capabilities of that site, and Rolanti's husband had used this facility to make their mortgage payments. In exchange for this access, Rolanti agreed to the terms and conditions of access to the website, including a provision that stated that access to the site was a privilege, not a right, and that CMI could limit, terminate, or revoke her right to use the site at any time, with or without cause. In fact, when she filed for chapter 7 relief, CMI reduced the number and scope of the features available to her on the online banking website, resulting in (among other things) a discontinuation of her ability to make her mortgage payments online.

In October 2012, after she had received her discharge and her case had been closed, Rolanti asked CMI to reinstate her ability to make online mortgage payments. CMI declined. It is at this juncture that the parties' recollections of the facts diverge. The precise words used in several conversations between Rolanti or her son on the one hand and CMI on the other are in dispute. According to Rolanti, her son, Ted, called and asked CMI to remove his father's name from the mortgage account and to add Ted and his wife's names to the account. The CMI representative said that she could not speak with Ted about the account because his name was not on the account and that his mother,

the account holder, would have to call.  Ted testified that the representative stated that Rolanti would have had to enter a reaffirmation agreement with respect to the mortgage in order to qualify for online banking.[1] In light of the unwillingness or inability of CMI to talk to Ted, Rolanti herself then called CMI to make the same request. According to Rolanti, CMI informed her, rudely, that they would need a death certificate in order to remove her husband from the account.  Again, according to Rolanti, in that call there was a mention by CMI of the need for a reaffirmation agreement, but Rolanti conceded at the hearing that she did not understand that CMI was pressuring her to enter a reaffirmation agreement at that time.

Rolanti testified that after her bankruptcy filing, she continued to receive paper account statements.  She stated that although she, with her son, had tried and failed to access her electronic account information after she filed her case, she "was more comfortable with the paper" version of her account.  She was able to make her payments based on the paper account statements, and she understood them.  She also testified that the monthly paper statements revealed the amount of the last payment received and the due date of the next payment.  As for online banking, she herself had never accessed the electronic version of her account and did not have a username or password.  Before she filed her chapter 7 petition, she had never even tried to access the account online.

Rolanti detailed her communications with CMI in her direct testimony.  She spoke to CMI on only one occasion, on October 22, 2012, when she called CMI to ask about her account.  She testified that the CMI agent told her that she would have to reopen her bankruptcy case and "reaffirm the mortgage loan" before CMI could "unfreeze" or "unlock" her online account.  Rolanti also testified that

---

[1] Ted also offered testimony that he and his wife were co-makers on the promissory note and co-mortgagees on the mortgage that encumbered the house (a two-family property), but that CMI had never placed him or his wife "on the mortgage account."  He complained that he had not received paper account statements and did not have access to the electronic account.  But none of this is material to the issues raised by Rolanti's motion.  Rolanti's son and daughter-in-law, as non-debtors, lack standing to bring a motion for a stay or discharge violation—they did not file bankruptcy petitions, were not protected by the automatic stay in Rolanti's case, and are not beneficiaries of Rolanti's discharge.  Whatever recourse they may have against CMI is not through this court, and they are not parties to the present motion.

CMI told her that it would provide "this information" (about the failure to reaffirm) to the credit reporting agencies "to indicate that [she] did not pay" the mortgage, but, in view of her testimony on cross examination, I find this testimony not credible. On cross-examination Rolanti described the call differently: she admitted that the CMI agent had not demanded that she reaffirm the debt or that she take any other action.

CMI offered the testimony of Ellen Hatfield. Hatfield is a CMI vice president of bankruptcy operations who was assigned to Rolanti's case and this motion. Hatfield described the process at CMI for dealing with mortgagors who file a chapter 7 case. In order to avoid running afoul of the automatic stay and later the discharge injunction, CMI makes changes in the ways it communicates with its mortgagors after they file petitions for bankruptcy relief. First, it stops sending the standard paper statement to the debtor and begins sending a specially designed statement. The revised statement contains a legend that states as follows:

> **THIS MORTGAGE ACCOUNT STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY, AS THIS DEBT MAY HAVE BEEN INCLUDED IN A BANKRUPTCY ACTION, OR MAY HAVE BEEN DISCHARGED. THIS IS NOT AN ATTEMPT TO COLLECT, RECOVER OR OFFSET THE MORTGAGE INDEBTEDNESS AGAINST YOU PERSONALLY. IF YOU ARE REPRESENTED BY AN ATTORNEY, PROVIDE A COPY OF THIS STATEMENT TO YOUR ATTORNEY AND CHAPTER 13 TRUSTEE, IF APPLICABLE.**
> **CITIMORTGAGE RESERVES THE RIGHT TO SUPPRESS ACCESS TO THE MORTGAGE WEBSITE.**

Further to this change in communications, from the date of her bankruptcy filing until the date of her discharge, CMI continued to allow Rolanti access to the mortgage website, but it limited that access to avoid collection activities. In addition, CMI revoked Rolanti's access to the online payment facility. After the discharge entered, CMI began sending Rolanti a slightly revised paper monthly statement that included the following information: payment amount, payment date, outstanding principal balance, interest rate, escrow balance, interest year to date, taxes paid to date, and payment received. The paper statement also repeated the special bankruptcy language substantially in the form

4

reproduced above, which recognized that Rolanti had not reaffirmed the debt and was therefore no longer personally liable on the obligation.

Hatfield further testified that, before her bankruptcy filing, Rolanti had been enrolled for access to the CMI financial services website. Hatfield also offered in evidence the "screen shot" of the terms and conditions to which Rolanti agreed at the time she and her then husband enrolled for access to the site. The terms and conditions state that the right to use the site is revocable, limited, and non-transferable. Because Rolanti did not reaffirm the underlying loan associated with the mortgage, CMI deactivated her access to the financial services website. The financial services website does not take into account that the mortgage debtor has been discharged in bankruptcy; accordingly, certain statements on the site may be inconsistent with the discharge.

**ANALYSIS**

  a.  **Violation of the Automatic Stay**

Though Rolanti seeks damages for violation of the automatic stay, she does not complain of any act that occurred during the period while the stay was in effect. The exclusive focus of her complaint is on the communications that transpired when she, first through her son and then on her own, called CMI to attempt to reinstate her access to the website, all of which occurred after her case was closed. The automatic stay, which is in fact a collection of stays set forth in 11 U.S.C. § 362(a)(1)-(8), prohibits specified acts over a limited period of time, but Rolanti has neither identified the particular part of the stay that she contends was violated nor identified an act that she contends violated it.

The automatic stay, which arises immediately upon the commencement of a bankruptcy case, 11 U.S.C. § 362(a) ("a petition filed under section 301, 302, or 303 of this title . . . operates as a stay"), continues as to acts against property of the estate "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The mortgaged property, the only property of the estate involved in the present motion, ceased to be property of the estate upon closure of the case. 11 U.S.C. § 554(c)

5

("Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."). The stay continues as to any other act until "the earliest of-- (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2). This case was not dismissed, and discharge entered before the case was closed, so the stay terminated for all other purposes upon entry of discharge. The parties agree that the Court entered an order of discharge on August 14, 2012 and closed the case on August 17, 2012. The automatic stay in this case had therefore fully expired no later than August 17, 2012. The conduct that Rolanti complains of—alleged statements of CMI personnel to her when she initiated a telephone call to CMI on October 22, 2012—occurred after the stay had expired. The statements therefore cannot have violated the stay. Accordingly, the portion of Rolanti's motion that seeks relief for alleged violations of the automatic stay is denied.

      **b.**      **Violation of the Discharge Injunction**

Rolanti argues that CMI violated her discharge by insisting that she reaffirm her mortgage loan obligation as a condition of restoring to her the online banking privileges it had previously afforded her, all after she had received her chapter 7 discharge. Rolanti contends that this conduct is a violation of the statutory discharge injunction set forth at 11 U.S.C. § 524(a)(2).

That subsection states: "A discharge in a case under this title [. . .] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt[2] as a personal liability of the debtor, whether or not discharge of

---

[2] "Any such debt" refers, in relevant part, to "any debt discharged under section 727" of the Bankruptcy Code. 11 U.S.C. § 524(a)(1).

6

such debt is waived." 11 U.S.C. § 524(a)(2).  The law governing redress for alleged violations of the discharge was set forth in *In re Schlichtmann*, 375 B.R. 41 (Bankr. D. Mass. 2007) and is directly on point:

> The Bankruptcy Code provides no express remedy, and therefore no private right of action, for violation of the discharge. A debtor may enforce the discharge injunction only through contempt proceedings. As set forth above, the bankruptcy court has authority under 11 U.S.C. § 105(a), and perhaps also inherently, to enforce the discharge by issuance of contempt orders and imposition of contempt sanctions.  The proceeding being in the nature of contempt, the debtor's burden of proving contempt, a violation of the discharge, is the clear and convincing standard.
>
> In order to establish civil contempt of the discharge order, such as would justify a sanction in the form of compensatory damages and attorney's fees, the Debtor must prove that (i) the alleged contemnor committed an act that violated the discharge with general intent to commit the act and (ii) with knowledge of the discharge order. Due process further requires that the discharge order, or the relevant provisions of law that define its scope, be clear and unambiguous as to whether the conduct in question is prohibited. However, neither specific intent to violate the discharge order nor bad faith is required. Where, as here, the conduct in question is not overtly violative of the discharge order (as, for example, would be a complaint to enforce a discharged debt in personam), "the core issue is whether the creditor acted in such a way as to coerce or harass the debtor improperly." The standard is "objective" and in each case assesses the conduct "in the context of its particular facts."

*In re Schlichtmann*, 375 B.R. 41, 94-95 (Bankr. D. Mass. 2007) (citations omitted).

As in *Schlichtmann*, the conduct at issue in the present case is not overtly violative of the discharge.  Therefore the inquiry is whether the creditor, CMI, used the conduct—a response in which it informed Rolanti that it could not reinstate her access to its online banking site because she had not reaffirmed her debt—to coerce or harass her into reaffirming the discharged *in personam* liability.

Before answering this, it is necessary to be clear about the post-discharge relationship between CMI and Rolanti.  Rolanti's discharge terminated her in personam liability for the mortgage loan but did not affect CMI's security interest, its mortgage, in Rolanti's home.  The discharge prohibits CMI from compelling Rolanti to pay the mortgage loan, but she may voluntarily continue to make the loan payments, 11 U.S.C. § 524(f), and, were she to suffer the loan to go into default, CMI would be free to

enforce its mortgage interest in the property by foreclosure. Against this background, Rolanti elected to continue making payments on the mortgage debt voluntarily. CMI has given her a clear and convenient method of making those payments and has accepted those payments; and through the paper statements it mails to her, it has kept her informed of the status of her payments and loan. The discontinuation of web access has perhaps rendered the relationship a bit less convenient (more for Rolanti's son than for her), but it has by no means made it impossible or even difficult for Rolanti to continue making her payments and thereby to avert foreclosure.

Did CMI, by the conduct of which Rolanti now complaints—a response in which it informed Rolanti that it could not reinstate her access to its online banking site because she had not reaffirmed her debt—coerce or harass her into reaffirming the discharged *in personam* liability? Clearly it did not. It is CMI's policy to discontinue the online privileges of a debtor mortgagor upon that mortgagor's filing of bankruptcy petition. It does this because features of the web site through which it extends online privileges to mortgagors would or might be violative of the automatic stay and, upon entry of a discharge, of the discharge injunction. CMI's policy is to reinstate the online privileges of a mortgagor chapter 7 debtor that has received a discharge only if and when the debtor reaffirms its *in personam* liability to CMI. It does this not to coerce or harass its mortgagors to reaffirm their debts but to avoid violating the discharge, a possibility that disappears upon reaffirmation. Reaffirmation, by definition, removes a debt from operation of the discharge. I note moreover that CMI did not initiate the communication in question; rather, it merely responded to an inquiry that Rolanti initiated. I further note that CMI continued to accept payments by check and to keep Rolanti abreast of the status of her account with monthly statements that were appropriate to her status as the recipient of a discharge. These measures were adequate to Rolanti's needs with respect to keeping current on and abreast of the status of her mortgage loan. Nothing about these facts smacks of coercion or harassment aimed at extracting from Rolanti a reaffirmation agreement.

In addition, Rolanti's agreement with CMI, as expressed in the terms and conditions of the online account, did not commit CMI to offer her online banking facilities come what may. As noted above, CMI made it abundantly clear to Rolanti that her access to the financial services website was "revocable, limited and non-transferable." CMI had a right to terminate Rolanti's access to the website and to online banking facilities whether or not she filed for bankruptcy and whether or not she reaffirmed her personal liability on the mortgage obligation. "Absent a contractual relationship, courts will not generally force parties to conduct business with particular debtors." *Jasper et al. v. Bowdoinham Federal Credit Union*, 325 B.R. 50, 55 (Bankr. D. Me. 2005). CMI did not refuse to deal with Rolanti after her discharge, but it did change the menu of services available to her.

In the Third Circuit case *of Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3rd Cir. 1988), the court ruled that a credit union did not violate the automatic stay by refusing to allow a debtor to remain a member of the credit union after she received a discharge. *Id*. at 85. A creditor may decline to do business with a debtor after that debtor receives a discharge, provided, as here, the refusal is not part of an attempt to collect on the discharged debt.

CMI's decision to revoke Rolanti's access to online banking services was motivated by a valid purpose, indeed precisely by a concern *not* to violate the discharge. CMI's financial services website includes statements and language that might run afoul of the automatic stay or the discharge injunction if a debtor were to access the website. The website repeatedly refers to "payments due," late charges, and other collection-related language. The paper statement that CMI uses in lieu of the web site, for debtors who have received discharges in bankruptcy, is merely indicative and informational. By discontinuing web access and using these statements, CMI is being careful, not attempting to pressure a debtor to pay a loan on which personal liability has been discharged.

In sum, nothing about CMI's communications with Rolanti and her son on or about October 22, 2012 violated the discharge injunction. CMI's representative did no more than inform Rolanti that CMI

9

would not restore her web access because she had not reaffirmed her debt to CMI. Nothing that the CMI representative said to her, or to her son on her behalf, constituted an effort to collect the underlying debt.

### c. Injunctive Relief

Rolanti also seeks an order compelling CMI to restore her access to its online banking functions. She offers no basis for this injunctive relief other than the argument that this restoration of access is already required by the discharge itself. Having found that the discharge is not violated by CMI's discontinuance of her access to the website and policy of restoring it only to those debtors who reaffirm the mortgage debts, I find no basis for compelling CMI to restore her access to its online banking functions.

### d. Conclusion

For the reasons stated herein I will enter an order denying the motion for sanctions against CMI.

Date: April 2, 2015

_____
Frank J. Bailey
United States Bankruptcy Judge